JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Dave Boyd appeals the judgment of the trial court finding that he and plaintiff-appellee Marcia Yvette St. John-Boyd were married at common law and granting appellee a divorce from him. We affirm.
 {¶ 2} The record before us demonstrates that on September 8, 2003, appellee filed a complaint for divorce. In her complaint, appellee alleged that she and appellant had entered into a common-law marriage on or about January 1, 1988. Appellant filed an answer and denied the existence of a common-law marriage. Appellant also filed motions to dismiss for lack of jurisdiction and for summary judgment, both of which were denied. Trial was held on August 16 and August 17, 2004, during which the parties presented evidence on their respective positions on the existence of a common-law marriage.
 {¶ 3} Common-law marriages have been prohibited in Ohio since October 10, 1991. R.C. 3105.12 provides, however, that a common-law marriage that occurred in this State prior to October 10, 1991, is valid.
 {¶ 4} The Supreme Court of Ohio has set forth the essential elements of a common-law marriage as follows: (1) a mutual agreement to marry in praesenti while competent to contract; (2) cohabitation as husband and wife; (3) holding out as husband and wife; and (4) a reputation as being husband and wife. Nestor v. Nestor (1984), 15 Ohio St.3d 143,472 N.E. 1091. The party alleging a common-law *Page 4 
marriage has the burden of proving all of the elements by clear and convincing evidence. Id. at 146.
 {¶ 5} Appellant argues that the trial court erred in finding a common-law marriage between him and appellee, as it found that there was "no direct evidence to prove an agreement to marry in praesenti." According to Nestor, however:
 {¶ 6} "The fundamental requirement to establish the existence of a common-law marriage is a meeting of the minds between the parties who enter into a mutual contract to presently take each other as husband and wife.
 {¶ 7} "* * *
 {¶ 8} "Where there is no direct proof in reference to the formation of the marriage in praesenti, testimony regarding cohabitation and community reputation tend to raise an inference of the marriage." Id.
 {¶ 9} This court has also held that an agreement to marry in praesenti may be proven either by way of direct evidence which establishes an agreement to marry or by proof of cohabitation and reputation. SeeWinthrop v. Harden (Nov. 14, 2002), Cuyahoga App. No. 79803;Scimenes v. Scimenes (Dec. 2, 1993), Cuyahoga App. No. 64235; Lehman v.Lehman (June 4, 1992), Cuyahoga App. No. 60823.
 {¶ 10} The trial court therefore properly "look[ed] to cohabitation and reputation in the community to prove an agreement was in existence." Appellee testified that she and appellant began dating in 1972 and had a mock marriage ceremony performed in 1974. At the time, appellant was married to another woman with whom *Page 5 
he had two children. According to appellee, appellant divorced in 1986, and the parties "made it official" in 1989 when he told his children. Appellee testified that she moved into appellant's home in Garfield Heights "unofficially" in 1988 and "officially" in 1989, when she moved all of her belongings from a home in Cleveland she had been renting. According to appellee, she and appellant continuously cohabitated from 1988 through 2003 in the Garfield Heights home, and they referred to each other as husband and wife.
 {¶ 11} Appellee presented the following documentary evidence in support of cohabitation prior to October 1991: a letter from the Bureau of Workers' Compensation and a Tupperware order form, both addressed to Marcia St. John at the Garfield Heights address; a copy of the parties' 1988 income tax return, which was filed "married filing jointly;" and a postcard addressed to Marcia and Dave Boyd. The parties did not file joint returns for the years 1989, 1990 or 1991. For the years 1992 through 2002, however, their tax returns were filed as "married filing jointly."
 {¶ 12} Appellee further testified that she underwent surgery in 1990 and appellant's insurance paid for it, and she went to cosmetology school in 1991 and appellant paid for it. Appellee also presented the testimony of six witnesses, who all testified that they knew the parties prior to October 1991, and they held themselves out as husband and wife.
 {¶ 13} Appellant testified that he never referred to appellee as his wife; she was always his "girlfriend." He could not recall the mock marriage ceremony *Page 6 
allegedly performed in 1974. According to appellant, appellee began living with him in 1992 or 1993. He admitted that he and appellee filed a joint tax return in 1988, but explained that he only did that so he could receive a larger refund, not because he and appellee were married. Appellant further testified that he always supported appellee, and she had several surgeries, so he put her on his health insurance so he would not have to pay for it, not because they were married.
 {¶ 14} The two daughters of the landlord from whom appellee rented her house in Cleveland testified on appellant's behalf. Both daughters essentially testified that appellee was a tenant in 1987, but they had no knowledge of when she moved. Appellant's mother, Dorothy Boyd, also testified on his behalf. According to Ms. Boyd, she met appellee in 1989 or 1990, and she was always appellant's "girlfriend." She further testified that appellee did not move to appellant's house in Garfield Heights until 1992 or 1993.
 {¶ 15} Appellant argues that the trial court erred in finding a common-law marriage because, as acknowledged by the court, most of appellee's documentary evidence of holding out and reputation as husband and wife postdated October 1991.
 {¶ 16} In Spencer v. Harmon (Sept. 19, 2002), Cuyahoga App. No. 80367, this court reversed the dismissal of a divorce complaint alleging common-law marriage. In that case, the parties began living together in 1989 while Harmon was still legally married to another woman, and at that time and thereafter, Harmon referred to *Page 7 
Spencer as his wife. Harmon legally divorced in 1990, and he and Spencer continued to hold themselves out to the public as husband and wife. Harmon gave Spencer several greeting cards addressed to her as his wife, cards from family and friends were sent to the couple, and in 1994, a card was addressed to "Sam and Hartents Harmon." The parties did not file joint tax returns prior to 1991, but did file joint tax returns from 1993 to 1996.
 {¶ 17} At trial, six witnesses testified that Spencer and Harmon were known as husband and wife; only three of those witnesses had known the parties prior to October 1991. This court found that there was an agreement in praesenti to marry because there was proof of cohabitation and reputation, even though much of the evidence postdated October 1991.
 {¶ 18} Similarly, we find in this case that the proof of cohabitation and reputation as husband and wife established an inference of marriage. We note that the trial court found that "[t]he evidence post 1991 bolsters the evidence prior to 1991." We also note, and agree with, the trial court's finding that "[appellant] cannot claim [appellee] as his wife for financial gain and deny her when there is a financial detriment."
 {¶ 19} Accordingly, appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 8 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and MARY J. BOYLE, J., CONCUR. *Page 1